## PHILLIPS v. CAMERON COUNTY WATER IMPROVEMENT DIST. NO. 2.
(No. 7985.)

Court of Civil Appeals of Texas. San Antonio.
April 11, 1928.

**I. Waters and water courses . ⬳231—Landowner cannot escape payment of maintenance fund of water improvement district by not demanding water, if district can furnish water (Rev. St. 1925, arts. 7751, 7752).**

Under Rev. St. 1925, arts. 7751, 7752, landowner within water improvement district could not escape the payment of his part of maintenance fund by not demanding water, if the water improvement district is in a position to furnish water to him.

**2. Waters and water courses ⬳247(2)—Landowner having adequate remedy at law on water improvement district's refusal to furnish water, injunction will not be granted.**

Water improvement district, being a public corporation created by general laws, would be liable for damages for failure to furnish water when demanded by landowner, and landowner has an adequate remedy at law to redress his wrongs if any be perpetrated on him by district, and hence injunction will not be granted against district to restrain it from collecting a flat rate assessment or to require it to deliver landowner sufficient water to irrigate the irrigable portion of his land.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by Frank T. Phillips against the Cameron County Water Improvement District No. 2. Judgment for defendant, and plaintiff appeals. Affirmed.

West & Ellis, of San Benito, for appellant.
Spears & Montgomery and C. C. Bowie, all of San Benito, for appellee.

FLY, C. J. This is a suit by appellant to procure a declaration by the court that certain flat rate assessments for water for the years 1921 to 1924, inclusive, were null and void, and to obtain a writ of injunction restraining appellee from attempting to collect such flat rate assessments, and that a mandatory injunction be issued commanding appellee to deliver to appellant's land sufficient water to irrigate the irrigable portion thereof. The court heard the evidence and entered a decree in favor of appellee for $2,478.32, to cover maintenance charges on 34.08 acres of land out of block 19 and 49.32 acres out

of block 20, described in the petition, and a temporary injunction theretofore granted appellant was dissolved.

The findings of fact, which follow, are adopted as the conclusions of fact of this court:

"(1) Defendant district was organized under the irrigation district laws of Texas, July 25, 1916, and purchased the irrigation system owned by San Benito Land & Water Company, consisting of pump, headgates, flumes, laterals, canals, etc., and said system was delivered to and taken possession of by defendant April 17, 1917.

"(2) Prior to the organization of the district, Los Indios lateral No. 1 was constructed and operated to the east line of James Dickinson subdivision at the northwest corner of block 16, which adjoins plaintiff's block 20 on the north, and from thence it was constructed and operated to a connection with river front lateral prior to September, 1919, at the corner of blocks 13 and 18 of James Dickinson subdivision. And prior to the organization of the district river front lateral, which skirts plaintiff's land on the south and east, was constructed and operated. These two laterals consisted of a part of said irrigation system which was purchased by the district.

"(3) In 1919 the Rio Grande washed away a part of river front lateral, and in 1919 and by April 1, 1920, a connection was made between Los Indios No. 1 lateral and river front lateral by the construction of Los Indios No. 1A lateral, and from this connection in 1920 water was carried down river front lateral to the east line of block 61 for the purpose of furnishing water to that block.

"(4) During the years 1921 to 1926, both inclusive, the lands fronting on river front lateral were in the brush and uncleared, except about 15 or 18 acres in the south part of plaintiff's land, from the east line of block 16 to and beyond plaintiff's block 19.

"(5) No person desiring to receive water during the course of the year furnished to the secretary of the board of directors of the district a statement in writing, such as is required by article 7751, for water to be used during the course of any one of the years from 1921 to 1925, both inclusive.

"(6) In 1920 Los Indios No. 10 lateral was constructed from the gate on Los Indios No. 1 lateral, at the northwest corner of block 16, to within about 50 feet of the north line of plaintiff's block 19, and water was furnished from that lateral for blocks 16 and 17; and upon demand for water to irrigate the north end of block 19, this lateral could have been extended in a day to block 19.

"(7) Los Indios No. 10 lateral passes through low land and was seeping, and to remedy this a 12-inch pipe line was constructed in January, 1925, from a check in Los Indios No. 1 on the line between block 16 and 17 to connect with Los Indios No. 10 where it crosses that line.

"(8) On January 31, 1927, plaintiff called for water to irrigate his beans in the north end of block 19, to be delivered February 1st. The south end of Los Indios No. 10 was extended to block 19, and water was delivered there at

4 o'clock p. m. February 1st, four hours after the work of extension was begun.

"(9) In order to hold water at a level of about 50.5 in Los Indios lateral No. 1 at the new check put in on the line between blocks 16 and 17, it was necessary to raise the levees of this lateral back to the east line of 16. The raising of the levees and the construction of a gate was done in about three weeks, but could have been done in two weeks, if necessary.

"(10) The work of cleaning out river front lateral from block 61 to the south end of plaintiff's blocks 19 and 20, and put it in shape to deliver water to those blocks, could have been done in two weeks, at any time during the years 1921 to 1926.

"(11) By agreement in open court, it was stipulated that about 10 acres, in the south part of blocks 19 and 20, are not irrigable because too high. All of the balance of blocks 19 and 20 can be irrigated from water taken from river front lateral, and about 18 acres in the north part of block 19 could be irrigated from Los Indios No. 10 as extended to block 19.

"(12) In 1919 Amos Herndon, representing the then owner of blocks 19 and 20, Mrs. Murphy, applied to P. R. Foley, the general manager of the district, for water to irrigate 15 or 18 acres in the south end of blocks 19 and 20; Foley told Herndon that the district could not furnish water at that time, and that the district would not charge flat rate or maintenance and operation charges against said land until the district was in position to water the land. Foley discussed this with the directors of the district and they knew about it.

"(13) In 1920 Los Indios No. 10 lateral was constructed to within about 50 feet of the north end of block 19, and Los Indios No. 1 lateral and river front lateral had been connected by the construction of Los Indios No. 1A lateral by April 1, 1920, and water could have been furnished the land in about two weeks, as shown by findings above, at any time during 1921 to 1926, to irrigate blocks 19 and 20."   .

[1] It is provided by an act of the Legislature enacted in 1923, which is made article 7751, Revised Statutes of 1925, that any person desiring water during the course of the year shall furnish the secretary of the board of directors of the water improvement district a statement in writing of the acreage intended to be put under irrigation by him, as well as the kind of crops to be planted, and at the same time such proportion of the water charge or assessment that may be prescribed by the board of directors. And it is provided:

"If such statement should not be furnished or such payment should not be made before the date for fixing the assessments, there shall be no obligation upon the district to furnish such water to such person for that year."

No such statement was made by appellant, and no payment made as provided by law. Appellant could not under the law escape the payment of his part of the maintenance fund by not demanding water, if the water improvement district was in a position to furnish water to him; and there is testimony to show that appellee was at all times prepared to furnish it, had the water been demanded. Article 7752.

[2] As held in Engleman Land Co. v. Donna Irr. Dist. No. 1 (Tex. Civ. App.) 209 S. W. 428, appellee is a public corporation created by a general law of Texas and is under the control and management of its board of directors, and we doubt the right or authority of a court to interfere by injunction with the exercise of their duties. The corporation would be liable for damages for a failure to furnish water when demanded by the landowner, and he had an adequate remedy at law to redress his wrongs, if any had been perpetrated on him.

"The restraining power of equity extends, therefore, through the whole range of rights and duties which are recognized by the law, and would be applied to every case of intended violation, were it not for certain reasons of expediency and policy which control and limit its exercise. This jurisdiction of equity to prevent the commission of wrong is, however, modified and restricted by considerations of expediency and of convenience which continue its application to those cases in which the legal remedy is not full and adequate. Equity will not interfere to restrain the breach of a contract, or the commission of a tort, or the violation of any right, when the legal remedy of compensatory damages would be complete and adequate. The incompleteness and inadequacy of the legal remedy is the criterion which under the settled doctrine determines the right to the equitable remedy of injunction." Pomeroy, Eq. (4th Ed.) § 1338.

Appellant had an adequate remedy at law to redress any wrongs perpetrated on him. No complaint is made of the amount of the judgment.

The assignments of error are overruled, and the judgment is affirmed.